**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Morris Garland Hobbs, ) | CIV 13-640-PHX-MHB |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Plaintiff Morris Garland Hobbs' appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On February 5, 2010, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, alleging disability beginning November 11, 2008. (Transcript of Administrative Record ("Tr.") at 130-32, 11.) His application was denied initially and on reconsideration. (Tr. at 74-76, 82-84, 11.) On November 9, 2010, he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 85-86, 11.) A hearing was held on September 6, 2011. (Tr. at 23-60.) On September 15, 2011, the ALJ issued a decision in which he found that Plaintiff was not disabled. (Tr. at 8-22.) Thereafter, Plaintiff requested review of the ALJ's decision. (Tr. at 5-7.)

The Appeals Council denied Plaintiff's request, (Tr. at 1-4), thereby rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

    (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

    (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

    (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

    At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between November 11, 2008, his alleged onset date, and February 15, 2010. (Tr. at 13.) At step two, he found that Plaintiff had the following severe impairment: left shoulder degenerative joint disease and status post left shoulder surgeries on March 6, 2009 and September 25, 2009. (Tr. at 13-14.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 14.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to occasional pushing and pulling with his left arm; cannot perform overhead reaching with his left arm; cannot perform fine manipulations with his left hand; and cannot climb ladders, ropes or scaffolds."[1] (Tr. at 14-16.) The ALJ determined that Plaintiff was unable to perform any past relevant work, but based on his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform between November 11, 2008

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

1  and February 15, 2010. (Tr. at 18-19.) Therefore, the ALJ concluded that Plaintiff has not
2  been under a disability from November 11, 2008, through the date of his decision. (Tr. at
3  19.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider his subjective complaints; (2) failing to properly weigh medical source opinion evidence; and (3) failing to properly evaluate whether his shoulder impairment met Listing 1.07 (fracture of an upper extremity) or Listing 1.08 (soft tissue injury). Plaintiff requests that the Court vacate the decision of the ALJ and "grant his finite period of disability from November 11, 2008 though February 15, 2010."

**A.   Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so. Specifically, Plaintiff states that the ALJ failed to provide legitimate reasons, "either because he did not rely on information during the timeframe in question or because he failed to understand why information or acquisition of information after the timeframe in question was not relevant."

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

1 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495 F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

At the administrative hearing, Plaintiff testified that he was right-handed. (Tr. at 37.) The ALJ noted that Plaintiff was alleging disability for a limited period between November 11, 2008 and February 15, 2010, and asked him to describe his abilities during this time period. (Tr. at 39.) Plaintiff denied any trouble sitting or standing. (Tr. at 41.) However, he testified that, between November 11, 2008 and February 15, 2010, he had "a real bad weakness" in his left arm, and that he could not have used that arm to reach above his head or lift a gallon of milk. (Tr. at 40-42.) Plaintiff testified that he would have been able to grasp and pick up a pen with his left hand, but that he would have had trouble lifting "anything heavier" with his left hand. (Tr. at 42.) He estimated that he could lift 20 pounds

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

1  overall. (Tr. at 39.) Plaintiff admitted that, between November 2008 and February 2010, he
2  was able to wash dishes, vacuum, and do "light grocery shopping" (such as going to the store
3  to buy milk). (Tr. at 44-45.) In response to questioning from his attorney, Plaintiff asserted
4  that he had performed these activities using only his right hand. (Tr. at 47.)

5  Having reviewed the record along with the ALJ's credibility analysis, the Court finds
6  that the ALJ made extensive credibility findings and identified several clear and convincing
7  reasons supported by the record for discounting Plaintiff's statements regarding his pain and
8  limitations.  Although the ALJ recognized that Plaintiff's medically determinable
9  impairments could reasonably be expected to cause the alleged symptoms, he also found that
10 Plaintiff's statements concerning the intensity, persistence, and limiting effects of the
11 symptoms were not fully credible. (Tr. at 14-16.)

12 In his evaluation of Plaintiff's testimony, the ALJ first referenced Plaintiff's daily
13 activities finding that "claimant's activities of daily living during the requested closed period
14 were broader than one would expect of a disabled individual, ... and tends to diminish the
15 claimant's credibility in connection with his disability claim ... ." (Tr. at 15.) "[I]f the
16 claimant engages in numerous daily activities involving skills that could be transferred to the
17 workplace, an adjudicator may discredit the claimant's allegations upon making specific
18 findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346
19 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35
20 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than alleged).
21 Specifically, the ALJ found that Plaintiff reported (and testified to) being able to do wash
22 dishes, vacuum, and go grocery shopping between November 2008 and February 2010. (Tr.
23 at 15, 44-45.)

24 While not alone conclusive on the issue of disability, an ALJ can reasonably consider
25 a claimant's daily activities in evaluating the credibility of his subjective complaints. See,
26 e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's
27 credibility determination based in part of the claimant's abilities to cook, clean, do laundry,
28 and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir.

1    2005) (upholding ALJ's credibility determination based in part on the claimant's abilities to
2    cook, clean, shop, and handle finances).

3    Next, the ALJ addressed the fact that Plaintiff failed to cooperate with the processing
4    of his Social Security claim, in that Plaintiff (through counsel) did not respond to requests
5    to identify additional medical sources from which medical records during the closed period
6    at issue could be obtained. (Tr. at 15-16, 173); see 20 C.F.R. § 404.1529(c)(4); Tonapetyan
7    v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (claimant's lack of cooperation at the hearing
8    supported adverse credibility finding); see also Fair, 885 F.2d at 604 n.5 (In assessing the
9    claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," such
10   as considering the claimant's reputation for truthfulness and any inconsistent statements in
11   her testimony.); Bunnell, 947 F.2d at 346.

12   Finally, the ALJ discussed the objective medical evidence finding that said evidence
13   did not support Plaintiff's allegations of disabling symptoms and limitations. (Tr. at 15-16);
14   see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008)
15   ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's
16   subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d
17   1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's
18   allegations supported ALJ's finding that claimant was not credible). Specifically, the ALJ
19   documented medical evidence demonstrating that Plaintiff's condition improved after the
20   March 2009 operation and that, although a suture anchor came loose in July 2009, Plaintiff
21   experienced a marked decrease of preoperative complaints following the September 2009
22   operation. (Tr. at 15-16, 231-32, 240-42.) Further, Plaintiff's allegations of disability
23   between November 2008 and February 2010 were also inconsistent with evidence that
24   orthopedist M.S. MacCollum, M.D., repeatedly released him to perform a reduced range of
25   light duty work during this time period. (Tr. at 15-16; Tr. at 225, 228, 230-31, 241-42, 248.)

26   In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's
27   allegations not entirely credible. While perhaps the individual factors, viewed in isolation,
28   are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor

1 is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors
2 that led to the ALJ's decision.  The Court concludes that the ALJ has supported his decision
3 to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,
4 the Court finds no error.

**B.    Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence.  Plaintiff argues that the ALJ did not provide "clear and convincing" reasons based on substantial evidence in the record for rejecting Dr. MacCollum's opinion and erred in accepting the opinions of the State agency reviewing physicians – who Plaintiff alleges were not looking at his claim from a closed period perspective but from an ongoing disability perspective.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle, 533 F.3d at 1164.  Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record.  In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester, 81 F.3d at 830.  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. See id.  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. See id.  Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. See id. at 832-33.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. See id. at 831.  "The opinions of non-treating or non-examining physicians may also serve

- 8 -

as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." Orn, 495 F.3d at 631.

Plaintiff argues that the ALJ erred in giving "little weight" to Dr. MacCollum's November 2, 2009 and October 5, 2009 assessments. On November 2, 2009, Dr. MacCollum opined that Plaintiff was unable to lift more than 5 pounds or perform repetitive overhead motion with his left arm. On October 4, 2009, Dr. MacCollum opined that Plaintiff "is not yet capable of a release to work." Since these assessments were ultimately contradicted by the State agency reviewing physicians, as well as, the medical evidence of record, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885 F.2d at 604. Here, the Court finds that the ALJ properly gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. MacCollum's November 2, 2009 and October 5, 2009 assessments. Further, the Court finds that the ALJ properly gave weight to the opinions of the state agency reviewing physicians who analyzed the medical evidence during the relevant time frame and issued assessments.

According to the record, Plaintiff indicated that he injured his left shoulder in August 2008, when he was helping move a refrigerator. He stated that he was prescribed steroid medication in August 2008, and physical therapy in October 2008. (Tr. at 247-48.)

1    On examination in December 2008, Dr. MacCollum noted some atrophy of the
2 suprasinatous muscle on the left side of Plaintiff's upper back (when compared to the right),
3 and decreased strength and internal rotation of his left arm. Despite reported discomfort,
4 Plaintiff had full elevation of his left arm and full external rotation. Dr. MacCollum
5 diagnosed a rotator cuff tear and restricted Plaintiff to light duty work with limited use of his
6 left arm. (Tr. at 247-48.)

7    In March 2009, Dr. MacCollum performed left shoulder surgery. (Tr. at 207-08.)
8 About two months after the operation, in May 2009, Plaintiff reported increased range of
9 motion and reduced pain. Dr. MacCollum released him to light duty work with the following
10 restrictions: no use of his left arm away from his side, and no lifting more than five pounds
11 with his left arm. (Tr. at 242.)

12   In July 2009, Plaintiff reported new symptoms (sharp pain with forward elevation and
13 abduction) but a decrease of his preoperative pain. Imaging showed that a suture anchor had
14 come loose. (Tr. at 240-41.) Nevertheless, Dr. MacCollum maintained Plaintiff on light duty
15 work through July and August 2009. (Tr. at 239, 241.)

16   In September 2009, Dr. MacCollum performed a second shoulder surgery. (Tr. at
17 189-90.) In October 2009, Plaintiff reported improved motion and a decrease in pain from
18 the September 2009 surgery. According to the record, Dr. MacCollum opined that Plaintiff
19 was not yet ready for a release to work, but encouraged him to be very aggressive with his
20 range of motion exercises at home. (Tr. at 232.) In early November 2009, Plaintiff reported
21 "a marked decrease of his preoperative complaints." Dr. MacCollum noted that Plaintiff was
22 making good progress and released him to work with no lifting greater than five pounds and
23 no repetitive overhead use of the left arm. (Tr. at 231.)

24   In late November 2009, Plaintiff reported a sharp pain with internal rotation behind
25 his back. Dr. MacCollum found that Plaintiff's reported symptoms could be related to the
26 progression of his strengthening exercises in physical therapy. He maintained Plaintiff's
27 work status and advised him to back off on the strengthening exercises. (Tr. at 229-30.) In
28 December 2009, Plaintiff reported that he had plateaued since his last visit. Dr. MacCollum

1  administered an injection, instructed Plaintiff to restart physical therapy, and maintained his
2  work status.  (Tr. at 228.)

3        In February 2010, Dr. MacCollum opined that Plaintiff had a 6% left upper extremity
4  impairment and a 4% whole person impairment, and specified that Plaintiff should not use
5  his left arm over his head and could lift up to 20 pounds with his left shoulder.  (Tr. at 225.)
6  That same month, Plaintiff completed a questionnaire about his activities in relation to his
7  Social Security claims.  When asked to describe how his shoulder impairment prevented him
8  from working, Plaintiff said, "no above shoulder use of left arm."  Plaintiff stated that he
9  shopped for groceries, washed dishes, vacuumed, and drove (for up to 90 miles at a time).
10 (Tr. 154-56.)

11       In April 2010, state agency physician William Backlund, M.D., analyzed the record
12 for the time period in question and opined that Plaintiff could do light work with limited use
13 of the left arm and occasional overhead reaching.  (Tr. at 64-65.)  Then, in October 2010,
14 state agency physician L.A. Woodward, D.O., reviewed Plaintiff's file, noted a lack of recent
15 medical evidence, and opined that the record was insufficient for a medical assessment.  (Tr.
16 at 70-71.)  However, based on records available during the time period in question, Dr.
17 Woodward signed off on a finding that Plaintiff had abilities consistent with light work.  (Tr.
18 at 72-73.)

19       Therefore, the Court finds that the ALJ reasonably found that Dr. MacCollum's
20 opinions supported a finding that Plaintiff's shoulder impairment did not prevent Plaintiff
21 from engaging in substantial gainful activity for 12 or more continuous months.  (Tr. at 16.)
22 Further, the ALJ correctly observed that, at the same time that Dr. MacCollum gave his
23 October 2009 opinion, he instructed Plaintiff to be very aggressive with range of motion
24 exercises at home.  (Tr. at 16, 232.)  And, a month later, in November 2009, Plaintiff
25 reported a "marked decrease of his preoperative complaints."  (Tr. at 16, 231.)  Thus, the ALJ
26 reasonably discounted Dr. MacCollum's October 2009 and November 2009 opinions.  (Tr.
27 at 16); see 20 C.F.R. § 404.1527(d)(4) (ALJ must consider consistency of opinion with the
28

1  record as a whole); Batson, 359 F.3d at 1195 (ALJ may discredit treating physician opinions
2  that are conclusory, brief, and unsupported by the record as a whole).

3  Moreover, contrary to Plaintiff's belief, the opinions from reviewing State agency
4  physicians, Dr. Backlund and Dr. Woodward, finding that Plaintiff had abilities consistent
5  with light work were congruent with the medical evidence and with evidence of Plaintiff's
6  activities during the relevant time period. (Tr. at 16.) The ALJ reasonably gave weight to
7  their opinions. See 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical ... consultants ...
8  are highly qualified physicians ... who are also experts in Social Security disability
9  evaluation."); Thomas, 278 F.3d at 957 (reviewing source opinions may serve as substantial
10 evidence when they are consistent with independent clinical findings or other evidence in the
11 record).

12 **C.     Listing 1.07 and Listing 1.08**

13 Plaintiff alleges that the ALJ erred in failing to properly evaluate whether his shoulder
14 impairment met Listing 1.07 (fracture of an upper extremity) or Listing 1.08 (soft tissue
15 injury). The Court disagrees.

16 If a claimant has an impairment or combination of impairments that meets or equals
17 an impairment found in the Listing of Impairments, then the ALJ must find the claimant
18 disabled. See 20 C.F.R. § 404.1520(d). For a claimant's impairment to match a listing, it
19 must, for a period of twelve continuous months, "meet all of the specified medical criteria.
20 An impairment that manifests only some of those criteria, no matter how severely, does not
21 qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see 20 C.F.R. § 404.1525(d) ("To
22 meet the requirements of a listing, [the claimant] must have a medically determinable
23 impairment(s) that satisfies all of the criteria in the listing."); 20 C.F.R. pt. 404, subpt. P,
24 app'x. 1 (stating the twelve-month rule). Similarly, for a claimant to show that an
25 impairment is "equivalent" to a listed impairment, he "must present medical findings equal
26 in severity to *all* the criteria for the one most similar listed impairment." Zebley, 493 U.S.
27 at 531 (citing 20 C.F.R. § 416.926). A claimant must offer a plausible theory of how his
28 combination of impairments equals a listing before the failure to consider the issue will be

error. See id. at 514; Burch, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").

Here, Plaintiff failed to mention, present any argument or evidence, or offer any plausible theory to the ALJ regarding Listing 1.07 or 1.08. Instead, Plaintiff, through counsel, merely asked the ALJ to find that his shoulder impairment met Listing 1.02 – which the ALJ addressed in his opinion. (Tr. at 185, 14.) This fact undermines Plaintiff's present claim that the ALJ should have discussed Listings 1.07 and 1.08. See Zebley, 493 U.S. at 530-31; Burch, 400 F.3d at 683; see also Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) (rejecting a represented claimant's argument that the ALJ failed to develop the record where "plaintiff's counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records"); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."). Thus, the Court finds no error.

## V. CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits in this case. The ALJ properly discredited Plaintiff's credibility providing clear and convincing reasons supported by substantial evidence; the ALJ provided specific and legitimate reasons, based on substantial evidence, for discounting Dr. MacCollum's November 2, 2009 and October 5, 2009 assessments; the ALJ properly gave weight to the opinions of the State agency reviewing physicians who analyzed the medical evidence during the relevant time frame and issued assessments; and the ALJ was not required to evaluate whether Plaintiff's shoulder impairment met Listing 1.07 (fracture of an upper extremity) or Listing 1.08 (soft tissue injury). Consequently, the ALJ's decision is affirmed.

1  Based upon the foregoing discussion,

2  **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social
3  Security be affirmed;

4  **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment
5  accordingly. The judgment will serve as the mandate of this Court.

6  DATED this 7th day of November, 2013.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge